UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Joanne Michelle Beaune**

   **v.**                                    Case No. 14-cv-174-PB
                                                Opinion No. 2015 DNH 136
**Carolyn Colvin,**
**Acting Commissioner,**
**Social Security Administration**

<u>MEMORANDUM AND ORDER</u>

Joanne Michelle Beaune seeks judicial review of a ruling by the Social Security Administration denying her application for Disability Insurance Benefits ("DIB"). Beaune claims that the Administrative Law Judge ("the ALJ") erred in finding that Beaune was not disabled. For the reasons set forth below, I deny Beaune's request for remand and affirm the decision of the Commissioner.

I.    <u>BACKGROUND</u>

A.    <u>Stipulated Facts</u>

Pursuant to this Court's Local Rule 9.1, the parties have submitted a joint statement of material facts (Doc. No. 15), which is part of the court's record. <u>See</u> LR 9.1. The facts relevant to the disposition of this matter are discussed below.

**B.   Procedural History**

Beaune is a 47-year-old woman who previously worked as an assembler, hotel front desk clerk, and a material handler (or racker).  On May 13, 2011, she filed a claim for DIB alleging disability beginning November 15, 2009 (the "onset date").  Her claim was denied on August 17, 2011, and again upon reconsideration on August 18, 2011.  Beaune then filed a written request for hearing on August 31, 2011.  She appeared and testified at a hearing on August 10, 2012, as well as at a follow-up hearing on January 20, 2013.  On March 20, 2013, the ALJ determined that Beaune was not entitled to benefits because she was not disabled before her alleged onset date and the date of his decision.

The ALJ followed the five-step sequential evaluation process used to determine whether an individual is disabled. See 20 C.F.R. § 404.1520(a)(4).  At step one, he found that Beaune had not engaged in substantial gainful activity since her alleged onset date.  At step two, he determined that Beaune's depression and post-traumatic stress disorder were severe impairments.  At step three, he found that Beaune's impairments did not meet or medically equal the severity of a listed impairment.  At step four, he found that Beaune was capable of performing her past relevant work as an assembler or material

handler and therefore was not disabled from the alleged onset date through the date of his decision.

The Appeals Council denied Beaune's request for review, rendering the ALJ's decision the final decision subject to judicial review.  On May 22, 2014, Beaune filed a complaint in this Court seeking judicial review of the ALJ's decision.

## II.  <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

Findings of fact made by the ALJ are accorded deference as long as they are supported by substantial evidence.  Id. Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If

the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion." Id. At 770. Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III.   ANALYSIS

Beaune contends that the ALJ erred (1) in determining her residual functional capacity; (2) in assessing her credibility; and (3) in adequately developing the record. I address each argument in turn.

### A.   Residual Functional Capacity

Beaune first attacks the ALJ's residual functional capacity ("RFC") assessment. The ALJ found that Beaune had the RFC to:

> perform a full range of work at all exertional levels
> but with the following nonexertional limitations: she
> would have moderate limitation in social functioning
> and concentration, persistence, or pace, with moderate
> meaning more than slight but still able to function
> satisfactorily.

Tr. at 81.  Beaune contends that the ALJ's RFC determination
fails to meet the specificity requirements of Social Security
Ruling ("SSR") 96-8p, fails to assign appropriate weight to the
various medical source opinions in the record, and fails to
address the requirements of SSR 85-15p.  See SSR 96-8p, 1996 WL
374184, at *1; SSR 85-15, 1985 WL 56857, at *4.

    1.  SSR 96-8p

    Beaune first claims that the ALJ's RFC finding is
"essentially meaningless with regard to describing her
functional limitations" and "does not provide the specificity
required by SSR 96-8p."  Doc. No. 10-1 at 6-7.

    According to SSR 96-8p, before an ALJ determines a
claimant's RFC, he "must first identify the individual's
functional limitations or restrictions and assess his or her
work-related abilities on a function-by-function basis,
including the functions in . . . 20 C.F.R. 404.1545[(c)]."  SSR
96-8p, 1996 WL 374184, at *1.  For individuals with mental
impairments, the function-by-function assessment must include
their "abilities to: understand, carry out, and remember
instructions; use judgment in making work-related decisions;
respond appropriately to supervision, co-workers and work
situations; and deal with changes in a routine setting."  Id. at
*6.  The ALJ "must include a narrative discussion describing how

the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . ." Id. at *7. The policy behind this rationale is clear: Without a function-by-function assessment, an ALJ may "overlook[ ] some of an individual's limitations or restrictions," which "could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work" and "an erroneous finding that the individual is not disabled." Id. at *4.

The SSR 96-8p function-by-function assessment is distinct from the so-called "paragraph B" criteria. Compare 20 C.F.R. Pt. 404 Subpt. P, App'x 1 § 12.00(C)(1)-(4) with SSR 96-8p, 1996 WL 374184, at *6. The "paragraph B" criteria include: (1) restriction of activities of daily living; (2) difficulties in maintaining social functioning; (3) difficulties in maintaining concentration, persistence, or pace; and (4) episodes of decompensation. Id. ALJs evaluate the "paragraph B" criteria at steps two and three of the five-step sequential process, in contrast to the SSR 96-8p function-by-function assessment, which is performed at steps four and five. SSR 96-8p, 1996 WL 374184, at *4; see Hilton v. Barnhart, No. 05-1306MLB, 2006 WL 4046076, at *6 (D. Kan. Aug. 28, 2006).

Significantly for this case, SSR 96-8p provides:

[t]he adjudicator must remember that the limitations

6

> identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . .

SSR 96-8p, 1996 WL374184, at *4; see Hilton, 2006 WL 4046076, at *6.  Therefore, the ALJ should be careful to distinguish between the "paragraph B" criteria and the more specific function-by-function analysis when making his findings at each step.

Although an ALJ should ideally address all of the functional limitations associated with a claimant's impairments in his RFC finding, courts have held that a failure to do so will not invalidate the decision if the functional limitations can be inferred from the record as a whole.  See Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013); Drennen v. Astrue, No. 10-CV-6007MAT, 2012 WL 42496, at *5 (W.D.N.Y. Jan. 9, 2012); Gallagher v. Astrue, 2009 DNH 048, 19-20. Because the specific functions listed in SSR 96-8p

> are only illustrative of the functions potentially relevant to an RFC assessment . . . [a]dopting a per se rule that these functions must be explicitly addressed on pain of remand (no matter how irrelevant or uncontested in the circumstances of a particular case) would thus not necessarily ensure that all relevant functions are considered.

Cichocki, 729 F.3d at 177.  Therefore, the relevant inquiry
should be "whether the ALJ applied the correct legal standards
and whether the ALJ's determination is supported by substantial
evidence."  Id.; see Gallagher, 2009 DNH 048, 19 (ALJ met
specificity requirements of SSR 96-8p despite vague RFC
determination and no explicit function-by-function assessment
because ALJ discussed claimant's functional abilities in body of
opinion and adopted functional assessment of medical source);
Drennen, 2012 WL 42496, at *5 (ALJ's failure to conduct
function-by-function analysis was harmless error because ALJ
addressed claimant's medical history in explicit detail).

Here, although the ALJ failed to provide an explicit
function-by-function assessment in his RFC finding, his error
was harmless.  The ALJ erred in making his RFC determination
because the limitations he cited were "paragraph B" criteria,
which are appropriate only at steps two and three of the five-
step sequential process.  Instead, the ALJ should have provided
the more detailed assessment of those limitations required by
SSR 96-8p.  Rather than citing "moderate limitations in social
functioning," Tr. at 81, the ALJ should have explained his
findings according to the specific limitations prescribed by SSR
96-8p – for instance, that Beaune had "mild limitations in
interacting appropriately with the public or supervisors"  Tr.

8

at 85, 125; see Hilton, 2006 WL 4046076, at *6 (explaining that mental RFC assessment required more detailed assessment than "paragraph B" criteria, involving itemizing various functions contained in the four broad categories used at steps two and three of the sequential evaluation process).  Nevertheless, although the ALJ failed to expressly perform the function-by-function analysis called for by SSR 96-8p, he made a series of findings that demonstrate by implication that he performed the requisite assessment.

First, the ALJ conveyed an awareness of the requirements of SSR 96-8p in his decision at step three when he explained the procedure for making an RFC assessment.  Specifically, he wrote:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental functional analysis.

Tr. at 81.  Although the ALJ failed to expressly follow these procedures, his decision makes clear that he recognized the different requirements that apply at steps three and four.

Second, the ALJ provided a detailed discussion of the
medical sources' function-by-function assessments in the
narrative discussion of his RFC finding.  See Tr. at 84-86.  The
ALJ detailed the functional assessments of Dr. Dinan, Dr.
Gustavson, and Ms. Stevens.  For example, the ALJ explained that
Dr. Dinan — the medical source to whom the ALJ gave the most
weight — found Beaune "would have no limitation in
understanding, remembering, and carrying out instructions, would
have mild limitation in interacting appropriately with the
public or supervisors and responding appropriately to routine
workplace changes, and would have no limitation interacting
appropriately with co-workers."  Tr. at 85; see SSR 96-8p, 1996
WL 374184, at *6 (listing mental functional abilities generally
required to perform work-related activities). That is, he
recounted Dr. Dinan's function-by-function assessment.  He then
went on in detail to describe Dr. Dinan's reasons for making his
findings.  The ALJ also repeated this process for Dr. Gustavson
and Ms. Stevens.  See Tr. at 85-86.

Third, the ALJ resolved all conflicting credibility
determinations.  The ALJ afforded the most weight to Dr. Dinan,
significant weight to Dr. Martin, some weight to Dr. Gustavson,
and little weight to Ms. Stevens, providing reasoned
explanations for his decisions.  Tr. at 85-86.  Although the ALJ

never explicitly adopted any one medical source's opinion in its entirety, we can infer that he adopted Dr. Dinan's functional assessment because he gave that assessment the most weight.  See Gallagher, 2009 DNH 048, 19-20 (inferring that ALJ adopted the opinion and functional limitation assessment of a medical source because ALJ gave him greater weight).

Fourth, the ALJ proffered a hypothetical to the vocational expert at the final hearing that reflected Beaune's functional limitations, explicitly stating that this hypothetical was "based upon Dr. Dinan":

> My second hypothetical is to . . . assume that there are no limitations with regard to understanding, remembering . . . or carrying out simple or complex . . . instructions or making judgments on either.  No impairment with regard to interacting with coworkers, but mild impairments with regard to the public and supervisors and responding appropriately to work situations and changes.  If we assume that as the . . . hypothetical, does that change your opinion?

Tr. at 125.  This hypothetical caused the vocational expert to remove "hotel front desk clerk" from the jobs that Beaune could perform, leaving only that of assembler or material handler.  The ALJ then relied on the vocational expert's opinion in his final decision, determining that Beaune could perform her past relevant work as an assembler or material handler.  Tr. at 87; cf. Hilton, 2006 WL 4046076, at *6 (detailed functional assessment in the ALJ's

11

narrative was insufficient to satisfy SSR 96-8p because the
ALJ did not include a functional assessment in his RFC
finding <u>or in his hypothetical to the vocational expert</u>).

Accordingly, although the ALJ failed to touch all the
bases, the record demonstrates that he sufficiently performed
the function-by-function assessment required by SSR 96-8p.
Thus, his failure to explicitly articulate his specific
functional limitation findings in his decision was harmless
error.

 2. <u>The ALJ Appropriately Weighed the Evidence of Record</u>

Beaune's next several arguments address the relative weight
that the ALJ accorded to the four medical opinions included in
the administrative record.  I conclude that each of the ALJ's
assignments of weight is supported by substantial evidence.

 **a.  Dr. Martin**

Beaune contends that the ALJ erred by assigning
"significant weight" to the opinion of state examiner Dr. Edward
Martin.  Doc. 10-1 at 8.  Her primary argument is that although
Dr. Martin supposedly based his opinion on a psychological
report from Dr. Gustavson, he ignored one of Dr. Gustavson's
conclusions.  Specifically, Beaune claims that Dr. Martin
ignored Dr. Gustavson's finding that Beaune was "unable to
tolerate stresses common to a work environment which includes

[the] ability to make decisions and interact with supervisors and consistently maintain attendance and schedule."  Tr. at 420. This argument misses the mark.  Dr. Martin did not need to address every conclusion Dr. Gustavson made.  Moreover, the ALJ specifically addressed this very statement when he analyzed Dr. Gustavson's opinion and afforded it little weight, explaining that the statement was neither well supported by objective medical evidence nor consistent with Beaune's presentation at the hearing.  See Tr. at 86; Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (it is the role of the ALJ, and not of the court, to weigh and resolve conflicts in the evidence).

Beaune also argues that Dr. Martin did not review the "voluminous treatment records from Genesis Behavioral Health." Doc. No. 10-1 at 9.  Again, this does not undermine either Dr. Martin's opinion or the ALJ's assessment of it because the ALJ himself reviewed these records and addressed them numerous times in the body of his decision.  Tr. at 82-84 (citing the Genesis Behavioral Health records seven times).

Finally, Beaune makes the convoluted argument that because the ALJ found moderate limitations in categories where Dr. Martin found no limitations, he "[gave] the opinion essentially no weight . . ."  Doc. No. 10-1 at 9.  She does not argue that

13

the ALJ should have actually afforded more weight to Dr. Martin's opinion – nor could she have, because Dr. Martin's opinion is less favorable to her claim.  See Doc. No. 10-1 at 9 ("[n]o weight . . . is all [Dr. Martin's opinion] deserves."). Instead, she claims that there is a discrepancy between what the ALJ said he did (assigning significant weight) and what he actually did (assigning no weight).  She apparently argues that this supposed discrepancy somehow nullifies the ALJ's assessment of weight.

First, as a practical matter, it is unclear what Beaune seeks to achieve with this argument.  The ALJ's conclusion that she had moderate limitations is more favorable to her than Dr. Martin's opinion that she had no limitations.  Further, even if I were to accept her contention that Dr. Martin's opinion should be rejected, the ALJ's ultimate conclusion would still stand because it is based on other substantial evidence in the record. Therefore, this argument does nothing to further Beaune's cause.

Second, to the extent Beaune's argument even raises the issue, this is not a case where the ALJ assigned substantial weight to an opinion only pretextually.  The ALJ and Dr. Martin's opinion align in other material respects that the claimant does not acknowledge.  For instance, Dr. Martin found no limitations in understanding and carrying out instructions, a

14

finding that, as I have explained, the ALJ implicitly adopted.
See Tr. at 125, 133.   Beyond that, an ALJ is not required to
adopt every single finding made in an opinion to which he
assigns significant weight.  If that were so, an ALJ could
rarely, if ever, assign more than minimal weight to any opinion.
Here, the ALJ's assignment of "significant weight" to Dr.
Martin's opinion did not obligate him to accept all of Dr.
Martin's conclusions wholesale.  The ALJ also afforded at least
some weight to the opinions of Dr. Dinan, Dr. Gustavson, and Ms.
Stevens.  See Tr. at 84-86.  It was his responsibility to weigh
the various opinions and reconcile their inconsistencies.  See
Rodriguez, 647 F.2d at 222.  The ALJ did so here, and
consequently, Beaune's argument fails.

    **b.  Ms. Stevens**

    Beaune contends that the ALJ's analysis of treating
counselor Jennifer Stevens' two opinions was "faulty."  Doc. No.
10-1 at 10.  The ALJ afforded limited weight to Ms. Stevens' May
2011 opinion and found her January 2013 hearing testimony "more
reasonable and consistent with her treatment observations, as
well as the claimant's presentation at the hearing."  Tr. at 86.
In May 2011, Ms. Stevens opined that Beaune had marked
limitations in interpersonal functioning and adaptation to
change and moderate limitations in daily activities and task

15

performance. Tr. at 409, 519. At the hearing in January 2013, however, she opined that Beaune was only moderately limited in all four areas. Tr. at 120.

Beaune first contends that the ALJ erred in finding Ms. Stevens' January 2013 testimony "grossly different" from her May 2011 opinion. See Doc. No. 10-1 at 10 (citing Tr. at 86). Substantial evidence supports the finding that the two opinions are "grossly different," however, because Ms. Stevens' opinion changed from two marked limitations and two moderate limitations to four moderate limitations. Regardless of how Ms. Stevens defined "moderate" and "marked" limitations when she made her findings, it was reasonable for the ALJ to find the opinions "grossly different" because Ms. Stevens used the same understandings of the terms in both her May 2011 opinion and her January 2013 testimony. See Tr. at 120, 519.

Beaune also contends that the ALJ ignored many limitations that Ms. Stevens identified at the hearing. Specifically, Beaune argues that the ALJ failed to discuss Ms. Stevens' testimony stating that Beaune had "a pretty significant impairment in her ability to even leave her home without a high, high level of anxiety," Tr. at 121, that she suffered from an "inability to initiate tasks and a lowered frustration tolerance around [Beaune's] ability to complete tasks in a timely

16

fashion," Tr. at 120, and that she would not have attended her hearing without Ms. Stevens' support, Tr. at 121.  Doc. No. 10-1 at 12.  This argument is also unavailing.  Despite Beaune's argument to the contrary, the ALJ weighed this testimony against conflicting evidence in the record.  See Tr. at 85-86.  Although the ALJ found Ms. Stevens' hearing testimony "more reasonable and consistent" than her May 2011 opinion, he found it less credible than "the generally mild limitations" found by Dr. Dinan and supported by Dr. Martin.  Tr. at 86.  As for Beaune's anxiety, Dr. Dinan opined that Beaune was anxious in the unfamiliar evaluation setting and reported anxiety in public settings.  And regarding Beaune's ability to complete tasks, Dr. Dinan opined that she would have "some limitations but still satisfactory performance."  Tr. at 510.  Thus, Ms. Stevens' opinion, even if credited, conflicted with other opinions in the record, and the ALJ acted well within his discretion by resolving those inconsistencies in a reasonable way.  See Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975) ("it is for the [Commissioner] to resolve conflicts in the medical evidence.").

        **c.   Dr. Gustavson**

    Beaune argues that the ALJ erred by affording little weight to one of the conclusions in Dr. Darlene Gustavson's August 2011

opinion.  The ALJ afforded significant weight to the majority of Dr. Gustavson's opinion, but afforded little weight to her conclusion that Beaune was "unable to tolerate stresses common to a work environment which includes the ability to make decisions and interact with supervisors and consistently maintain attendance and schedule."  Tr. at 85-86, 420.  The ALJ explained that he gave little weight to that conclusion because he did not find it well supported by the objective medical evidence on record and also because he found it inconsistent with Beaune's presentation at the hearing.  Tr. at 86.  Instead, he afforded more weight to Dr. Dinan's September 2012 conclusion that Beaune had a limited ability to tolerate workplace stresses because it "was based upon a more complete picture of [Beaune's] functioning."  Tr. at 86.

Beaune primarily argues that there is objective medical evidence in the record to support Dr. Gustavson's conclusion that she is unable to tolerate workplace stressors, including treatment records from Genesis Behavioral Health and a functional assessment done by Dr. Pamela Gallant.  This argument, however, misapprehends the standard of review. Instead, I "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  See Rodriguez

Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (conflicts in the record are resolved by the ALJ and not the court).  Here, substantial evidence supports the ALJ's decision.  For example, treatment notes in the record from Genesis Behavioral Health indicate that Beaune retained a calm affect and fair judgment and insight during visits with two different medical care providers.  Tr. 480, 517.  Moreover, the ALJ relied on the September 2012 opinion of Dr. Dinan, who concluded that Beaune could handle limited workplace stressors.  Therefore, the ALJ was within his authority to give little weight to Dr. Gustavson's conclusion that Beaune could not handle workplace stressors.

Beaune also faults the ALJ for failing to explain how her presentation at the hearing showed that she could handle workplace stressors.  This argument is unpersuasive.  The ALJ (and not the reviewing court) "had the opportunity to observe [Beaune's] demeanor [during the hearing] and was entitled to draw inferences based on those observations.  See Morgan v. Chater, No. 62-408-JD, 1996 WL 392144, at *14 (D.N.H. Apr. 26, 1996).  The ALJ did not need to explicitly spell out in greater detail which actions the claimant took that caused him to

believe she could handle workplace stressors.  See id.

### d.   Dr. Dinan

Beaune argues that the ALJ erred in relying on Dr. Dinan's opinion to support his determination because Dr. Dinan's "mental status examination reveals a more impaired individual than the ALJ acknowledged."  Doc. No. 10-1 at 14.  I disagree.

Substantial evidence supports the ALJ's decision to give the most weight to Dr. Dinan's opinion.  First, the ALJ gave an adequate explanation for his reliance on the opinion: Dr. Dinan was an acceptable medical source who personally examined Beaune; his was the most recent opinion that addressed her functioning; and his assessment was reasonable and consistent with Beaune's clinical presentation over time.  Tr. at 84-85.  Second, the ALJ accurately characterized Dr. Dinan's opinion.  Although Beaune points to findings in Dr. Dinan's opinion that are helpful to her case, such as signs of depression and anxiety, Dr. Dinan's overall opinion supported the ALJ's conclusions.  For example, Dr. Dinan opined that Beaune was able to communicate effectively with supportive friends and co-workers, that she was only mildly limited in interacting with the public and supervisors, and that she was unimpaired in her ability to understand and remember instructions and was able to attend and concentrate satisfactorily despite some limitations.  Tr. at 510-13.

Therefore, there is substantial evidence in the record to support the ALJ's decision to give Dr. Dinan's opinion the most weight.

Beaune argues that her subjective complaints to Dr. Dinan support greater limitations than what the ALJ found.  This argument is also unavailing, as the ALJ found that her subjective complaints were not entirely credible.  See Alvarado 511 F.2d at 1049 (subjective symptoms must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment).

   3.   SSR 85-15

Beaune argues that the ALJ failed "to see [her] lack of independence, her need for support in normal everyday activities, her social isolation, her failure to stop inflicting harm upon herself, etc."  Doc. No. 10-1 at 16.  She quotes extensively from SSR 85-15, which she says offers guidance in assessing the ability of a claimant who suffers from nonexertional impairments, including stress and mental illness, to do work.  See id.  Her argument that the ALJ erred in some respects under SSR 85-15, however, is incomprehensible.  Beaune argues: "The ALJ never referenced this ruling in his decision . . . . This was error."  Doc. No. 10-1 at 17.  Nowhere in SSR 85-15 does the ruling require that the ALJ reference it in his

21

opinion.  See SSR 85-15, 1985 WL 56857.  Nor does Beaune offer
any support to her contention that the ALJ was in error for not
referencing it.  To the extent that Beaune argues that the ALJ
"never reflected in his RFC finding any limitations [she] might
experience to the demands of work" as listed under SSR 85-15, I
have already discussed this issue in my discussion about SSR 96-
8p and the ALJ's function-by-function assessment.

## B.   **Credibility Finding**

Beaune argues that the ALJ erred in finding that her
"statements concerning the intensity, persistence and limiting
effects of [her] symptoms are not entirely credible" because the
ALJ failed to properly evaluate her subjective complaints.  Tr.
at 82.

It is the ALJ's responsibility to determine whether a
claimant's statements about her symptoms are credible.  See 20
C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *4.  A
two-step analysis governs an ALJ's evaluation of symptoms.  SSR
96-7p, 1996 WL 374186, at *2.  First, the ALJ considers whether
the claimant is suffering from "an underlying medically
determinable physical or mental impairment[ ] . . . that could
reasonably be expected to produce the individual's pain or other
symptoms."  Id.  Second, the ALJ must determine whether the
claimant's statements about her symptoms are substantiated by

objective medical evidence, and if not, the ALJ must consider other relevant information to weigh the credibility of her statements.  See id.; Guziewicz v. Astrue, 2011 DNH 010, 14. The ALJ's credibility assessment of the claimant "is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).  This is because the ALJ, not the reviewing court, "observed the claimant, evaluated [the claimant's] demeanor, and considered how that testimony fit in with the rest of the evidence . . ."  Id.

At step one, the ALJ found that Beaune's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  He determined that Beaune's posttraumatic stress disorder and depression were severe impairments, and he considered how they affected her functional limitations.  At step two, however, the ALJ found that Beaune's statements concerning the intensity, persistence, and limiting effects of her symptoms were unsubstantiated by objective medical evidence and that they were not credible to the extent that they were inconsistent with her RFC.

Substantial evidence supports the ALJ's finding that Beaune's depression and posttraumatic stress disorder symptoms were not as intense or limiting as she alleged.  To support his

credibility determination, the ALJ explained that (1) although Beaune alleged disability beginning on November 15, 2009, she did not seek mental health treatment until April 2011; (2) the objective medical record did not support her allegations that she was barely functioning; (3) the record did not support her claims that she was barely able to leave home; (4) the record indicated that she received some relief from her symptoms with medication; and (5) the record indicated that she stopped working in November 2009 for reasons unrelated to her impairments.  Tr. at 83-84.

Beaune nevertheless contends that the ALJ ignored pertinent evidence bearing on her credibility and that he failed to fairly consider all of the evidence in the entire record related to her credibility.  First, she argues that the ALJ should have inquired as to why she selected the alleged onset date of November 15, 2009 when her treatment did not commence until April 2011.  Doc. No. 10-1 at 19-20.  Second, although she concedes that she was able to attend a bike rally, her son's graduation, and two oral hearings – despite alleging difficulty leaving her home — she argues that the ALJ did not put these events into proper perspective.  Id. at 20-22.  These events, she explains, were very difficult for her and required significant emotional support.  Third, she argues that attending

24

treatment appointments should not be used to undercut her
credibility because this would set a "dangerous precedent."  Id.
at 22.  Regardless, she argues, since her treatment and visits
with friends often occurred in or near her house, the ALJ was
wrong to use this as evidence to show she was not unable to
leave the house easily.  Finally, she argues that despite the
ALJ's decision, her treatment notes show that she is unable to
carry out activities of daily living, "such as cleaning,
shopping, cooking, taking public transportation, paying bills,
maintaining a residence, and caring appropriately for one's
grooming and hygiene."  Doc. No. 10-1 at 23.

Contrary to Beaune's argument, however, I "must affirm the
[Commissioner's] resolution, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence."  Rodriguez Pagan, 819 F.2d at 3.  The
ALJ is not obligated to credit subjective symptoms that a
claimant alleges during a hearing, especially when contrary
objective medical evidence exists in the record.  Here, the ALJ
did not find Beaune's reports of the limiting effects of her
symptoms to be credible because "there is insufficient treatment
history, objective medical observations, and clinical findings
to support" her allegations.  Tr. at 82.  That conclusion fell
well within the ALJ's discretion.

C.    **Developing the Administrative Record**

Beaune finally argues that the ALJ failed to develop the record because he did not ask her sufficient questions about her symptoms and, moreover, did not ask Ms. Stevens to clarify the definitions of "moderate" and "sometimes." I disagree.

As the Supreme Court has explained, "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 110-11 (2000). The ALJ's duty to develop the record is heightened if the plaintiff is unrepresented by counsel at the hearing, Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 142 (1st Cir. 1987), or if there is a gap in the record that the ALJ could have filled without "without undue effort," Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980). Remand is appropriate where there are evidentiary gaps that prejudice a plaintiff's claim. Mandziej v. Chater, 944 F. Supp. 121, 130 (D.N.H. 1996).

Beaune, who was unrepresented by counsel, first argues that "the ALJ inquired minimally into the nature and severity of her mental impairments." Doc. No. 10-1 at 26. To support this contention, Beaune observes that the final hearing in January 2013 lasted only thirty-two minutes, that her testimony appeared

26

on only four transcript pages, and that the ALJ did not inquire about all of her symptoms documented in her treatment records. This argument is unpersuasive because Beaune fails to demonstrate any gaps in the evidentiary record or any prejudice from the ALJ's allegedly insufficient questioning.  The record documents Beaune's treatment continuously from when she first started mental health treatment in April 2011 until her final hearing in January 2013.  See Tr. at 406-14, 427-85, 616-712. These records document visits made several times a month with several different therapists and nurse practitioners, as well as consultations with two different examining psychologists, one of which the ALJ ordered after finding the record at the time of the first hearing offered insufficient support for Beaune's testimony.  Tr. at 107, 416-21, 507-11.  The ALJ also asked Beaune at the first hearing whether there was anything else she would like to add.  Tr. at 116.  Beaune did not offer any other information not already documented in the record.  Therefore, the record contained no gaps, and Beaune has failed to show any prejudice.

Beaune also argues that the ALJ failed to sufficiently question Ms. Stevens because he did not ask her to define the terms "moderate" and "sometimes" as she used them, and because there was testimony that Ms. Stevens "could have related" to the

ALJ but that the ALJ failed to elicit.  Again, these arguments fail to show an evidentiary gap or demonstrate a resulting prejudice to the plaintiff.  Because the record contains almost two years of treatment notes and two consultative examination reports that support the ALJ's finding, Beaune's contention does not justify a finding of an evidentiary gap in the record or prejudice to her.

### III.   CONCLUSION

For the foregoing reasons, I grant the Commissioner's motion to affirm (Doc. No. 13) and deny Beaune's motion to reverse (Doc. No. 10).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

July 10, 2015

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.

28